[Cite as *State v. Scheeler*, 2023-Ohio-1130.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21CAA110064 |
| | : | |
| ROBERT SCHEELER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Delaware County Court
of Common Pleas, Case No.
20CRI060371


JUDGMENT:    AFFIRMED


DATE OF JUDGMENT ENTRY:    March 31, 2023


APPEARANCES:

For Plaintiff-Appellee:

MELISSA A. SCHIFFEL
DELAWARE CO. PROSECUTOR
MARK SLEEPER
145 North Union St., 3rd Floor
Delaware, OH 43015

For Defendant-Appellant:

GLORIA L. SMITH
670 Meridian Way, #188
Westerville, OH 43082

*Delaney, J.*

{¶1} Appellant Robert Scheeler appeals from the October 25, 2021 Judgment Entry of Prison Sentence of the Delaware County Court of Common Pleas. Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} In February 2020, appellant was charged by indictment with one count of rape and one count of gross sexual imposition (GSI) against his stepdaughter, Jane Doe. During the pendency of that case, a second victim, Mary Roe, disclosed an allegation, and appellant was re-indicted in June 2020. The subsequent indictment contained one count of rape and GSI involving Jane Doe, and one count of GSI involving Mary Roe.

{¶3}   The following evidence is adduced from the record of appellant's jury trial.

*Counts I and II:  Jane Doe*

{¶4} Jane Doe was born to Mother Doe and Father Doe in 2012. Mother Doe and Father Doe divorced early in Jane's life and Jane lived much of her childhood with Maternal Grandmother Doe and Paternal Grandmother Doe. In the ensuing years, Jane Doe lived intermittently with Mother Doe, Father Doe, an aunt, and her grandparents, all of whom lived in separate households.  Family members described a continual tug-of-war over custody of Jane Doe which continued throughout disclosure of these allegations.

{¶5} Around late 2013 or early 2014, Mother Doe married appellant and the two eventually had a child together, H.S., in 2016.  Jane Doe lived with the couple throughout this period and had little contact with Grandmother Doe.

{¶6} In the summer of 2019, Jane Doe was again living with Grandmother Doe. When Grandmother Doe mentioned visitation with Mother Doe and appellant, Jane was

visibly fearful and said she would only visit if appellant was not present. Grandmother Doe took Jane to a pediatrician and Jane disclosed that appellant touched her butt.

{¶7} Grandmother Doe then took Jane to Galion City Hospital where she was seen by Tammy Robertson, a forensic nurse, on December 19, 2019. Jane disclosed to Robertson that her stepfather put his penis in her butt, squeezed it, and was mean to her, hurting her. Jane stated this occurred when she was four or five years old, while Mother Doe was giving the infant a bath. Jane said this happened "a lot of times," and that she told Mother Doe, but Mother Doe called her a liar and said she was bad.

{¶8} Jane also disclosed to a medical forensic interviewer at the Center for Family Safety and Healing at Nationwide Children's Hospital (NCH) that appellant put his penis in her butt, and that the abuse started when she was five years old and ended when she was six years old. She described the sensation as "feeling like poop was coming out of her butt." A videotape of the NCH interview of Jane was played at trial.

{¶9} Jane testified at trial that appellant put his "man parts" in her butt while her mother was bathing the baby. She testified this occurred when she was four years old and the baby was around a year old. Jane testified that she disclosed the abuse at the time to Mother Doe, who didn't believe her, and to Father Doe, who apparently took no action. Jane testified that she also disclosed to Grandmother Doe and to her paternal grandmother.

{¶10} Father Doe testified that he first learned of the allegations during a phone call from Detective Madden of the Delaware Police Department in early 2020. He was aware that Jane Doe had a troubled relationship with Mother Doe and was hesitant to visit with her because she was afraid of appellant.

*Count III:   Mary Roe*

{¶11} In early 2020, Mary Roe was living with her mother, Mother Roe, who dropped Mary off to play at Grandfather Roe's house in Delaware.  About ninety minutes later, Mary called Mother Roe in tears, stating that a neighbor touched her private area over top of her clothes.  Mother Roe learned this occurred while Mary was playing with the neighbor's children.  Upon cross-examination, Mother Roe said Mary did not disclose the touching on the same day it occurred, and she was not sure how long it was between the touching and the disclosure.

{¶12} Subsequent investigation by the City of Delaware Police Department revealed the neighbor was appellant.

{¶13} Mary Roe was also evaluated at NCH and disclosed the touching.

{¶14} At trial, Mary testified that she was playing with appellant's children and fell asleep watching TV.  Appellant's wife was not present.  When Mary awoke, appellant was sitting beside her and put his hand on her "front private area" over her clothes.  Mary was frightened and ran out of the apartment, but had to return to get her sister. As she left with her sister, appellant told her not to tell anyone or he would hurt her mom. Mary did not disclose the touching until appellant moved out of the apartment.

*Defense case: testimony of appellant and his wife*

{¶15} Mother Doe testified at trial on behalf of appellant. She described an on-and-off relationship with Maternal Grandmother Doe and noted they have battled over custody and visitation with Jane.  In denial of Jane's allegations, Mother Doe testified that Jane was always with her when she bathed the baby because Jane was obsessed with

the baby.  Mother Doe believed Jane was "coached" into making the allegations against appellant.

{¶16} Mother Doe further testified that she was always present at the apartment when Mary Roe and her sister came over to play, and Mary even stayed overnight sometimes.

{¶17} Appellant testified on his own behalf at trial. He stated that he was not around Jane Doe much in the early days of his relationship with Mother Doe, and when Mother Doe became pregnant with his baby, they decided Jane would live with Maternal Grandmother.

{¶18} Appellant testified that he does not get along with Maternal Grandmother Doe or her husband. He learned of the allegations against him at the police department in February 2020 when he was questioned. He was not surprised by the allegations because Mother Doe had recently told Grandmother Doe that she wanted to take Jane back.

{¶19} Appellant denied raping Jane. He described one incident in which he paddled her butt after she knocked over a candle; this was a one-time incident of discipline which was never repeated because Mother Doe was upset about it.

{¶20} Appellant also denied touching Mary Roe's vaginal area over her clothes. He testified that the only time he touched Mary was to hug her when his family moved out of their apartment.

*Indictment, motion to sever, and trial*

{¶21} Appellant was charged by indictment with one count of rape of a child under the age of 13 pursuant to R.C. 2907.02(A)(1)(b), a felony of the first degree; one count of

gross sexual imposition (G.S.I.) against a child under the age of 13 pursuant to R.C. 2907.05(A)(4), a felony of the third degree; and one count of G.S.I. against a child under the age of 13 pursuant to R.C. 2907.05(A)(4), a felony of the third degree.  Counts I and II are against victim Jane Doe; Count III is against victim Mary Roe.

{¶22} On July 13, 2020, appellant filed a motion for relief from prejudicial joinder, seeking to  sever trial of Counts I and II [the "Doe counts"] from trial of Count III [the "Roe count']. Appellant asserted there was no connection between the Doe counts and the Roe count, which are separated in time by approximately three years.  The alleged victims are both children under the age of 13 and the evidence in support of the respective counts would be highly inflammatory and prejudicial. The trial court scheduled a hearing on the motion for August 10, 2020 and continued the jury trial date to September 29, 2020.

{¶23} Appellee filed a memorandum in opposition on August 6, 2020, arguing that evidence of Counts II and III, both G.S.I., was admissible in trial of each count to prove that the touching of each child was for the purpose of sexual gratification.  Appellee further asserted evidence of the separate counts is simple and direct, involving different victims on different dates and independent investigations.

{¶24} The trial court overruled appellant's motion for relief pursuant to Crim.R. 14 by judgment entry dated September 4, 2020.

{¶25} Numerous status conferences were held. Defense trial counsel withdrew and new defense trial counsel was appointed.

{¶26} The matter proceeded to trial by jury and appellant was found guilty as charged. At sentencing on October 25, 2021, the trial court imposed a term of 25 years to life upon Count I, to be served consecutively with a term of 48 months upon Count III,

for an aggregate term of life in prison with parole eligibility after 29 years. The trial court found Count II merges with Count I and therefore no sentence was imposed upon Count II.

{¶27} Appellant now appeals from the trial court's judgment entry of October 25, 2021.

{¶28} Appellant raises seven assignments of error:

**ASSIGNMENTS OF ERROR**

{¶29} "I. APPELLANT WAS DENIED DUE PROCESS RIGHTS PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION DUE TO PREJUDICIAL JOINDER."

{¶30} "II. APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT ALLOWED AN INCOMPETENT WITNESS TO TESTIFY AT TRIAL."

{¶31} "III. APPELLANT WAS DENIED THE RIGHT TO CONFRONT WITNESSES IN VIOLATION OF THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

{¶32} "IV. APPELLANT'S CONVICTIONS ARE CONTRARY TO LAW AND TO THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION IN THAT APPELLANT'S CONVICTIONS WERE NOT SUPPORTED

BY SUFFICIENT EVIDENCE AND [ARE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶33} "V. APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

{¶34} "VI. APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN DETECTIVES FAILED TO GIVE MIRANDA WARNINGS."

{¶35} "VII. APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION."

**ANALYSIS**

I.

{¶36} In his first assignment of error, appellant argues the trial court should have granted his motion to sever Counts I and II (Jane Doe) from Count III (Mary Doe). We disagree.

{¶37} Appellant concedes he did not renew his motion to sever. Brief, 15. As a result, we will review this assignment of error under a plain-error standard. Crim.R. 52(B); *State v. Wilson*, 5th Dist. No. 16-CAA-08-0035, 2017-Ohio-5724, 93 N.E.3d 1282, ¶ 44. In order to prevail under a plain-error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error "is to

be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶38} Crim.R. 8(A) permits joinder of offenses and states the following:

> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶39} Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. See, *State v. Torres,* 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981).

{¶40} If similar offenses are properly joined pursuant to Crim. R. 8(A), the accused may move to sever the charges pursuant to Crim. R. 14, wherein the burden is on the defendant to demonstrate his rights would be prejudiced by joinder. *State v. Meeks*, 5th Dist. No. 2014CA00017, 2015-Ohio-1527, 34 N.E.3d 382, ¶ 88, citing *State v. Strobel,* 51 Ohio App.3d 31, 33, 554 N.E.2d 916 (3rd Dist.1988). Crim.R. 14 governs relief from prejudicial joinder and states: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶41} In *State v. Schaim,* 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992), the Supreme Court of Ohio explained the following:

> When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476, 481–482; *Drew v. United States* (C.A.D.C.1964), 331 F.2d 85. If the evidence of other crimes would be admissible at separate trials, any "prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials," and a court need not inquire further. *Drew v. United States,* 331 F.2d at 90.

{¶42} Evid.R. 404(B) governs other crimes, wrongs or acts and states the following in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶43} The rule is in line with R.C. 2945.59 which states:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's

scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶44} We recognize the admission of other-acts evidence is limited because of the substantial danger a jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment, and this danger is especially high in a case "of an inflammatory nature" such as this one. *State v. Meeks*, 5th Dist. No. 2014CA00017, 2015-Ohio-1527, 34 N.E.3d 382, ¶ 91, citing *Schaim,* supra, 65 Ohio St.3d at 59, 600 N.E.2d 661, and *State v. Curry,* 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). However, "[a]s long as used for purposes other than proving that the accused acted in conformity with a particular character trait, Evid.R. 404(B) permits the admission of 'other acts' evidence if it is 'related to and share[s] common features with the crime in question.'" *State v. Markwell,* supra, 2012-Ohio-3096, ¶ 45, citing *State v. Lowe,* 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus.

{¶45} After reviewing the evidence presented, we find if separate trials were held, each offense would be admissible in the other case to show appellant's motive and intent (sexual gratification), opportunity and plan (appellant targets young girls he has access

to in his home when his wife is absent), and absence of mistake or accident (touching was not innocent or by accident). *Wilson*, supra, 2017-Ohio-5724, ¶ 50.

{¶46} Further, we find the evidence of each offense was simple and direct. *Id.* "Evidence is 'simple and direct' if the jury is capable of readily separating the proof required for each offense, if the evidence is unlikely to confuse jurors, if the evidence is straightforward, and if there is little danger that the jury would 'improperly consider testimony on one offense as corroborative of the other.'" *State v. Freeland,* 4th Dist. Ross No. 12CA003352, 2015-Ohio-3410, 2015 WL 5010542, ¶ 14, citing *State v. Skatzes,* 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 34.

{¶47} Even if we were to find the other-acts evidence inadmissible in separate trials, evidence of each crime is simple and distinct. The jury was capable of separating the proof of multiple charges where, as here, the evidence of each crime is uncomplicated. *State v. Hamblin,* 37 Ohio St.3d 153, 159, 524 N.E.2d 476 (1988). Each victim testified separately and appellee introduced evidence of each distinct crime. The separate offenses were clearly laid out for the jury and the jury was instructed that each count and victim should be considered from its own evidence. *Meeks*, supra, at ¶ 99.

{¶48} The trial court in the instant case used our decision in *Wilson*, supra, to craft a jury instruction. "Courts have held that any prejudice that results from the joinder of offenses is minimized when a trial court cautions a jury before deliberations to consider each count, and the evidence applicable to each count separately, and to state its findings as to each count uninfluenced by its verdict on any other counts." *Freeland* at ¶ 16.

{¶49} At the conclusion of the evidence, the trial court instructed the jury as follows (T. at 780), using the identical instruction cited in *Wilson,* supra, at ¶ 53:

A charge as set forth in each count in the Indictment constitutes a separate and distinct matter. You must consider each count and the evidence applicable to each count separately, and you must state your finding as to each count uninfluenced by your verdict as to any other count. The Defendant may be found guilty or not guilty of any one or all of the offenses charged.

{¶50} Upon review, we find no plain error in the offenses being joined for trial. *Id.* Appellant's first assignment of error is overruled.

II.

{¶51} In his second assignment of error, appellant argues the trial court erred in finding Jane Doe and Mary Roe competent to testify. We disagree.

{¶52} Every person is competent to be a witness except those of unsound mind, and children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly. Evid.R. 601(A).

{¶53} In determining whether a child under the age of ten is competent to testify, the trial court must consider: (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful. *State v. Wolters*, 5th Dist. No. 21CA000008, 2022-Ohio-538, 185 N.E.3d 601, ¶ 30, citing *State v. Frazier,* 61 Ohio St.3d 247, 574 N.E.2d 483 (1991). To reverse a finding of competency, we must find the trial court abused its discretion. *State v. Lewis*, 4 Ohio App.3d 275, 448 N.E.2d 487 (3rd Dist. 1982).

{¶54} In the instant case, the trial court voir dired Jane Doe and Mary Roe before they testified at trial. After questioning Jane, the trial court found her competent to testify, noting * * * "[t]he standard is that the witness had the ability to perceive a factual experience, to recollect the experience, to communicate her observations, and differentiate the truth from a falsity and to testify truthfully[.]"

{¶55} Appellant argues the trial court's questions did not accomplish this purpose because they did not determine whether Jane could recollect an experience that occurred when she was between four and six years old. Upon our review of the record of the competency hearing, however, we find the child victim demonstrated an ability to receive accurate impressions of fact, was able to recollect impressions or observations, could communicate what was observed, understood truth and falsity, and appreciated her responsibility to be truthful. *Wolters*, supra, 2022-Ohio-538, ¶ 31. The jury could evaluate whether she was able to accurate remember events from early childhood and the trial court did not abuse its discretion in finding her competent to testify.

{¶56} Appellant further argues Jane's inconsistent and contradictory testimony at trial demonstrates she was not competent to testify. In *Wolters*, supra, 2022-Ohio-538, at ¶ 33, we favorably cited the decision of the Twelfth District in *State v. Jones*, 12th Dist. Brown No. CA2000-11-032, 2001 WL 1402638 at *6, in which the Court addressed the issue at stake in a determination of the competence of a child witness:

> [I]t is not the role of the trial judge to determine that everything a child will testify to is accurate, but whether the child has the intellectual capacity to accurately and truthfully recount events. *State v. Leach* (Feb. 20, 2001), Clermont CA2000-05-033, unreported, at

5 [2001 WL 171026]. Any inconsistencies between [a child's] trial testimony and the testimony of other witnesses relate to [the child's] credibility, not [their] competency. See *id.*; *State v. Rayburn* (Apr. 24, 2000), Clinton CA99-03-005, unreported, at 6 [2000 WL 485501]. [The child's] credibility was for the jury's consideration.

{¶57} Akin to our analysis in *Wolters*, we find any inconsistencies and contradictions in Jane's testimony went to her credibility, not to her competency.

{¶58} Appellant similarly argues that the trial court did not test Mary Roe's factual experiences or recollections and did not raise the issue of her purported mental health issues. Again, the trial court's role was to determine whether Mary had the intellectual capacity to accurately and truthfully recount events, and we find no reason in the record to disagree with the trial court's conclusion that Mary could do so. See, *State v. Williams*, 5th Dist. Stark No. 2021CA00081, 2022-Ohio-2245.

{¶59} Finally, we note the trial court gave appellant the opportunity to question the child victims during voir dire after first submitting potential questions to the court for review. The trial court declined to ask appellant's question ("what is the difference between being wrong and someone telling a lie?") because the question goes to the impeachment of the child's testimony, not her competence as a witness. T. 263-264.

{¶60} Appellant's second assignment of error is overruled.

III.

{¶61} In his third assignment of error, appellant argues the trial court should not have admitted the videotaped interviews of Jane and Mary at NCH into evidence over his objections. We disagree.

{¶62} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, at ¶ 44, the Ohio Supreme Court found that statements made to interviewers at child-advocacy centers that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause. Statements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause when the declarant is unavailable for cross-examination at trial. *Id.*

{¶63} Appellant argues the trial court should not have admitted the children's forensic interviews because admission was barred by *Arnold*, supra, but this argument is misplaced. In the instant case, both Jane and Mary testified and were available for cross-examination; therefore, *Arnold* does not apply and the Confrontation Clause was not violated by admission of these statements. *State v. Burge*, 5th Dist. Stark No. 2016CA00217, 2017-Ohio-7862, ¶ 41.

{¶64} Appellant's third assignment of error is overruled.

IV.

{¶65} In his fourth assignment of error, appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶66} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme

Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶67} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶68} We begin by noting that appellant asserts his "convictions" are based upon insufficient evidence and are against the manifest weight of the evidence, but his argument solely addresses the rape conviction in Count I. In that count, appellant was found guilty upon one count of rape of a child under the age of 13 pursuant to R.C. 2907.02(A)(1)(b), which states: "No person shall engage in sexual conduct with another * * * when any of the following applies: The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" includes "anal intercourse * * * and, without privilege to do so, the insertion, however

slight, of any part of the body or any instrument, apparatus, or other object into the * * * anal opening of another. Penetration, however slight, is sufficient to complete * * * anal intercourse." R.C. 2907.01(A).

{¶69} At trial, Jane Doe testified that appellant pulled her pants down and "put his man parts in [her] butt." T. 277. Appellant argues appellee failed to establish "penetration of [Jane's] anus." Brief, 21. Appellant's argument is directly contradicted by Jane's testimony. Additionally, evidence of penetration, however slight, is sufficient to establish sexual conduct. Moreover, as appellee points out, Jane described the sensation of anal penetration to the forensic interviewer in explicit detail. We find appellee presented sufficient evidence of sexual conduct with regard to anal intercourse.

{¶70} Appellant argues his conviction is against the manifest weight of the evidence because it is premised upon Jane's word alone, absent any physical evidence. The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Nash*, 5th Dist. Stark No. 2014CA00159, 2015-Ohio-3361, ¶ 20, citing *State v. Cunningham,* 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, at ¶ 51–57. We are mindful, moreover, that "[c]orroboration of victim testimony in rape cases is not required." *State v. Meeks*, 5th Dist. Stark No. 2014CA00017, 2015-Ohio-1527, 34 N.E.3d 382, ¶ 81, appeal not allowed, 143 Ohio St.3d 1543, 2015-Ohio-4633, 40 N.E.3d 1180, citing *State v. Cuthbert,* 5th Dist. Delaware No. 11CAA070065, 2012-Ohio-4472, ¶ 28 and *State v. Johnson,* 112 Ohio St.3d 210–217, 2006-Ohio-6404, 858 N.E.2d 1144, at ¶ 53.

{¶71} Appellant also points to minor inconsistencies in Doe's account. While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency

of the evidence. *State v. Wolters*, 5th Dist. No. 21CA000008, 2022-Ohio-538, 185 N.E.3d 601, ¶ 20, citing *State v. Craig*, 10th Dist. Franklin App. No. 99AP-739, 2000 WL 297252, (Mar. 23, 2000) *3, internal citation omitted.

{¶72} In a case involving inconsistencies in the testimony of a seven-year-old child victim, this Court noted, "The jury was free to use their life experiences in assessing the testimony of a child verses an adult and draw its conclusion." *Wolters, supra,* at ¶ 20, citing *State v. Allen*, 5th Dist. Stark No. 2021CA00051, 2022-Ohio-268, 2022 WL 278398, ¶ 31. We therefore find inconsistencies in the Jane Doe's statements regarding the sexual conduct do not render the judgment against the manifest weight or sufficiency of the evidence. *Id.*

{¶73} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 189, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Jane's testimony, if believed, supports a conviction for a charge of rape in violation of R.C. 2907.02(A)(2). *State v. Singleton*, 5th Dist. Delaware No. 20 CAA 06 0026, 2021-Ohio-3010, ¶ 32, appeal dismissed, 165 Ohio St.3d 1508, 2022-Ohio-140, 179 N.E.3d 1267.

{¶74} Upon review, we decline to second-guess the credibility determinations of the jury in this matter. See, *Schmelmer*, supra. This is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175. The trial court neither lost its way nor created a

miscarriage of justice in convicting appellant of rape, and appellee presented evidence of his guilt beyond a reasonable doubt.

{¶75} Appellant's fourth assignment of error is overruled.

V.

{¶76} In his fifth assignment of error, appellant argues he was deprived of a fair trial due to prosecutorial misconduct. We disagree.

{¶77} The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott,* supra, 51 Ohio St.3d at 166, 555 N.E.2d 293.

{¶78} In the instant case, without reference to the record, appellant argues the prosecutor improperly asked Jane Doe and Mary Roe whether they were telling the truth, despite the fact, he claims, that the children were never accused of lying. Appellant asserts the prosecutor thereby pandered to the jury and improperly rehabilitated Jane Doe and Mary Roe when defense trial counsel never accused them of lying.

{¶79} Upon our review of the record, we find that during direct examination of Jane Doe, the prosecutor asked whether she understood what it meant that she swore to

tell the truth (T. 279) and whether she told her mother the truth when she asked what happened (T. 281). Appellant did not object to either question. Upon redirect, after defense trial counsel asked whether she was coached in making the allegations, the prosecutor asked Jane whether she told the truth to the various investigators who interviewed her and whether during direct examination of Mary Roe, the prosecutor asked whether she was truthful with a doctor who examined her. T. 486. Appellant did not object to the question.

{¶80} If trial counsel fails to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. White,* 82 Ohio St.3d 16, 22, 1998–Ohio–363, 693 N.E.2d 772 (1998), citing *State v. Slagle,* 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992). We therefore review appellant's allegations under the plain-error standard. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn,* 5th Dist. No.2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales,* 10 Dist. Nos. 03-AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶81} Appellant asserts that these questions amounted to improper rehabilitation of a witness pursuant to Evid.R. 801(D)(1)(b) because the children were not accused of lying. As appellee points out, however, appellant's defense at trial was that Jane Doe was coached into lying by her dysfunctional family and Mary Roe lied because she was mentally ill. T. 158-159. We have held that such implications during opening statements are sufficient to allow the State's use of Evid.R. 801(D)(1)(b). *State v. Crawford*, 5th Dist. Richland No. 07 CA 116, 2008-Ohio-6260, ¶ 64, citing *State v. Abdussatar,* 8th Dist. No. 86406, 2006–Ohio–803 ["attacking a victim's credibility during opening statement has been found to constitute grounds for permitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b)."].

{¶82} Appellant does not frame his argument as a hearsay issue but instead as one of prosecutorial misconduct. We fail to discern, and appellant does not describe, how the prosecutor's questions affected the outcome of the trial. We find no prosecutorial misconduct and the fifth assignment of error is overruled.

VI.

{¶83} In his sixth assignment of error, appellant argues the trial court erred in admitting his statements to Detective Madden in the absence of *Miranda* warnings. We disagree.

{¶84} On the morning of the first day of trial, appellant orally moved to suppress his statement to Detective Madden at the Delaware Police Department, arguing that he was "lured" to the police department on the pretense of investigation of a neglect complaint. Appellant argued Madden intended to arrest him at the conclusion of the interview and already had an arrest warrant, but failed to Mirandize him before

questioning.  The trial court found the majority of the interview did not constitute custodial interrogation and overruled the oral motion to suppress and granted it in part.  T. 26-27.

{¶85} Appellant's oral motion to suppress was untimely and procedurally improper, as acknowledged by defense trial counsel. "By failing to file a motion to suppress illegally obtained evidence, a defendant waives any objection to its admission." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 136, citing *State v. Campbell,* 69 Ohio St.3d 38, 44, 630 N.E.2d 339 (1994), overruled on other grounds.

{¶86} Setting aside the procedural irregularity, we find no *Miranda* violation. The Fifth Amendment to the United States Constitution guarantees that "'[n]o person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel.'" (*ellipses sic.*) *Miranda v. Arizona,* 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The inherently coercive nature of custodial interrogation heightens the risk that a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial interrogation can "'undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely.'" (*ellipsis sic.*) *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), *quoting Miranda* at 467; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶87} Pursuant to *Miranda*, therefore, statements stemming from custodial interrogations are admissible only after a showing that the procedural safeguards have been followed. "Custody" is when a defendant is taken into custody "or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda* at 478. The relevant inquiry is whether a reasonable person under those

circumstances would have felt they were under arrest. *State v. Schlupp,* 5th Dist. Coshocton No.2012CA0007, 2012–Ohio–6072.

{¶88} In the instant case, the trial court found the decision of the Second District instructive in *State v. Cottrell,* 2nd Dist. Montgomery No. 28089, 2019-Ohio-889, ¶ 25, as follows:

> The custody test is objective. "[T]he initial determination of custody depends upon the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Accordingly, a police officer's "unarticulated plan [to arrest a suspect] has no bearing on the question whether a suspect was 'in custody' at a particular time." *Berkemer v. McCarty*, 468 U.S. 420, 442, 82 L.Ed.2d 317, 104 S.Ct. 3138 (1984). The only relevant inquiry is how a reasonable person in the suspect's position would have understood the situation. *Id.*

{¶89} In the video of appellant's interaction with Madden at the police department, there is 35 minutes of "chitchat" between appellant and officers in which appellant is clearly not in custody, followed by another 50 minutes in which appellant is simply seated in a chair while detectives speak to his wife elsewhere. In the last 23 minutes of the video, appellant is in custody because Madden enters the room, tells him he's not free to leave, and announces appellant is "in custody at this point," but interrogation ceased.

Nevertheless, the trial court suppressed the final portion of the video after appellant's arrest, because he was clearly in custody.

{¶90} We find the trial court did not err in overruling the untimely motion to suppress as to all but the final portion of the video in which appellant was under arrest. We note the video was not shown at trial and appellant has not made the video part of the record on appeal. Madden was questioned about his interview of appellant and testified that appellant denied the allegations by Jane Doe, and he speculated that she had been coached. At the time these statements were made, appellant was not subject to custodial interrogation.

{¶91} Appellant's sixth assignment of error is overruled.

VII.

{¶92} In his seventh assignment of error, appellant summarily argues he received ineffective assistance of defense trial counsel, incorporating his arguments from the other assignments of error.  We disagree.

{¶93} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶94} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶95} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶96} Appellant has not made any specific arguments regarding defense trial counsel's alleged ineffectiveness, other than to incorporate his other arguments. As appellee points out, though, defense trial counsel filed a motion to sever, made an oral motion to suppress, and objected to the introduction of the statements made to the forensic interviewer. The fact that the trial court overruled the motions does not render trial counsel ineffective. Appellant also fails to establish how any action or inaction of defense trial counsel affected the outcome of the proceeding and therefore has not established ineffective assistance of counsel.

{¶97} Appellant's seventh assignment of error is overruled.

**CONCLUSION**

{¶98} Appellant's seven assignments of error are overruled and the judgment

of  the Delaware County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Wise, J., concur and

Hoffman, P.J. concurs separately.

*Hoffman, P.J., concurring*

**{¶99}** I concur in the majority's analysis and disposition of Appellant's second, third, fourth, fifth, sixth, and seventh assignments pf error.

**{¶100}** I further concur with the majority's disposition of Appellant's first assignment of error, but not for all of the same reasons.

**{¶101}** I begin by questioning whether this claimed error should be reviewed under the plain error standard. I do so being fully aware Appellant did not renew his motion to sever at trial and of this Court's opinion in *State v. Wilson*, 5th Dist. No. 16-CAA-08-0035, 2017-Ohio-5724, in which I participated and agreed to apply the plain error standard of review.

**{¶102}** Appellant filed his motion for relief from prejudicial joinder on July 13, 2020. A hearing on the motion was heard on August 10, 2020. The trial court denied the motion on September 4, 2020. It seems reasonable standard appellate review can proceed based upon the motion, memoranda in support and/or contra, and the transcript of the hearing held thereon.

**{¶103}** While I question the applicability of the plain error rule, I, nonetheless, would find the trial court did not error in denying Appellant's motion for relief from prejudicial joinder under the simple and direct evidence rule.

{¶104} However, I disagree with the trial court's and majority's conclusion the evidence in each case herein would be admissible in the other case under the exceptions listed in Evid.R. 404(B) and/or R.C. 2945.59. My reasons for doing so are set forth in my concurring opinion in *Wilson*, supra.