[Cite as *State v. Cochran*, 2025-Ohio-2697.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | | Hon. Robert G. Montgomery, J. |
| | : | | Hon. Kevin W. Popham, J. |
| -vs- | : | | |
| | : | | |
| MEGAN COCHRAN, | : | | Case No. 24 CAA 12 0105 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County
Court of Common Pleas, Case No.
24 CRI 02 0100

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      July 31, 2025

APPEARANCES:

For Plaintiff-Appellee

MELISSA A. SCHIFFEL
KATHERYN L. MUNGER
Delaware County Prosecuting
  Attorney's Office
145 N. Union St., 3rd Floor
Delaware, OH  43015

For Defendant-Appellant

CHRISTOPHER BAZELEY
9200 Montgomery Road
Suite 8A
Cincinnati, OH  45242

*Montgomery, J.*

## FACTS OF THE CASE

**{¶1}** On October 28, 2023, Megan Cochran ("Cochran") packed several bags for herself and her son and told him that they were going on a "paw patrol mission." *11/19/24 Trial Transcript*, p. 66. Cochran's husband ("Husband"), noticed the packed bags and told Cochran she was not leaving with their son. Husband testified that Cochran "[p]ulled out a Glock 26 and pointed it square at my chest." *Id.*, p. 68. Cochran then ordered Husband to go into the basement and told their son, "If your father comes upstairs, you'll get to hear a gun." *Id.*, p. 77. While in the basement, Husband called 911. *Id.*, p. 79. Husband was able to see the live feed of his doorbell camera and saw Cochran make multiple trips carrying the packed bags out of the house. *Id.*, p. 87. Husband also testified that it appeared as though Cochran made sure her gun was ready to fire. *Id.* The police arrived, arrested Cochran and took her into custody. *Id.*, p. 179. Several hours later, while Cochran was in jail, she threw her lunch tray, made threats of self-harm and threatened to take her clothes off. *Id.*, p. 203. Cochran also hit Sgt. A.F. in the face with her food tray and tried to attack other staff members and bit Officer K.F.'s finger. *Id.*, pp. 205, 206.

**{¶2}** On February 8, 2024, Cochran was indicted on the following charges:

Count 1: Kidnapping with a firearm specification in violation of R.C. 2905.01(A)(3), (F1) and R.C. 2941.145(A);

Count 2: Kidnapping with a firearm specification in violation of R.C. 2905.01(B)(1), (F2) and R.C. 2941.145(A);

Count 3: Abduction with a firearm specification in violation of R.C. 2905.02, (F3) and R.C. 2941.145(A);

Count 4: Domestic Violence in violation of R.C. 2919.25(C), (M4);

Count 5: Aggravated Menacing in violation of R.C. 2903.21(A), (M1); and

Counts 6 and 7: Assault in violation of R.C. 2903.13(A), (F5).

{¶3} Cochran filed a Competency Motion that was heard by the trial court on March 15, 2024. The motion was overruled, and Cochran was found to be competent.

{¶4} A three-day bench trial began on November 19, 2024, wherein Cochran asserted a defense of Not Guilty by Reason of Insanity ("NGRI").

{¶5} On November 26, 2024, the trial court found that Cochran did not prove her affirmative defense of NGRI by a preponderance of evidence and found Cochran guilty on counts 1, 3, 4, 5, 6 and 7. *11/26/2024 Transcript*, p. 22. The trial court acquitted Cochran of the charge of count 2. *Id.*, p. 26. The trial court merged the charges of F1 Kidnapping and Abduction for purposes of sentencing and chose to sentence on the count of kidnapping. *Id.*, p. 26.

{¶6} Cochran was sentenced to a combined indefinite term of incarceration of 13 to 17 years.

{¶7} Cochran filed a timely appeal.

## ANALYSIS

{¶8} Cochran asserts the following assignments of errors:

{¶9} "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT COCHRAN FAILED TO ESTABLISH HER NGRI DEFENSE."

{¶10} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE COCHRAN'S CONVICTIONS FOR DOMESTIC VIOLENCE AND AGGRAVATED MENACING WITH HER CONVICTION FOR KIDNAPPING."

**{¶11}** Cochran's first assignment of error alleges that the trial court's finding that Cochran did not prove her NGRI defense is against the weight of evidence presented at trial. *Appellant Brief*, p. 2.

**{¶12}** The trial court found, "[t]he defendant has not proved by a preponderance of the evidence that she was suffering from any serious mental disease or defect and did not understand the wrongfulness of her conduct." *11/26/2024 Transcript*, p. 22.

**{¶13}** The Supreme Court held in *State v. Grate*, 2020-Ohio-5584, ¶ 76, citing *State v. Monford*, 2010-Ohio-4732, ¶ 70 (10th Dist.) that, "NGRI is an affirmative defense that a defendant must prove by a preponderance of the evidence. The proper standard for determining whether a defendant has successfully demonstrated this defense and thus is entitled to an NGRI instruction is whether he has introduced sufficient evidence, which if believed, would raise a question in the mind of a reasonable person concerning the existence of the issue." *Id.*

**{¶14}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence*,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis deleted.) *State v. Thompkins*, 1997-Ohio-52, ¶ 24, citing Black's Law Dictionary (6 Ed. 1990) at 1594.

**{¶15}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court "must weigh the evidence and all reasonable inferences from

it, consider the credibility of the witnesses and determine whether in resolving conflicts, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Coldiron*, 2004-Ohio-5651, ¶ 24 (12th Dist.). "This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction." *Id*.

**{¶16}** The definition for the NGRI defense is set forth in R.C. 2901.01(A)(14). The statute provides that, "[a] person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, [by a preponderance of the evidence], that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts."

**{¶17}** In the case sub judice, the State presented a report and testimony from Dr. Marciani who opined that, "[M]s. Cochran does not have a severe mental disease or defect. Further, she knew the wrongfulness of the charged offenses." *11/21/2024 Transcript*, p. 418. Cochran presented a report and testimony from Dr. Webber who stated, "I determined that she was exhibiting symptoms of a severe mental disease at the time of the offense charged." *11/20/2024 Transcript*, p. 248.

**{¶18}** In cases where there are differing opinions regarding the insanity defense, the trier of fact must make a credibility determination when deciding which experts to believe. *State v. Sanders*, 2022-Ohio-2261, ¶ 71 (8th Dist.), citing *State v. Murphy*, 2016-Ohio-1165, ¶ 39 (4th Dist.).

**{¶19}** Because an insanity defense ultimately rests on the credibility and persuasiveness of the experts' testimony, appellate courts have consistently declined to

second-guess the trier of fact's interpretation of the evidence in NGRI cases given the deferential standard of review. Sanders, supra at ¶ 72.

**{¶20}** If the record shows that the trial court considered the NGRI defense, the appellate court should defer to the trial court's interpretation of the evidence and should only reverse the judgment if there is overwhelming and uncontradicted evidence to the contrary. *Id.*

**{¶21}** In determining which expert the trial court found to be more credible, the court first considered the doctors' credentials. "Dr. Webber has 13 years of postgraduate experience. Earned her Ph.D. five years ago, not board certified. She has been with a State Forensic Hospital for five years." *11/26/24 Transcript*, p. 6.

**{¶22}** Dr. Marciani has 31 years of post-graduate experience, earned her Ph.D. 23 years ago, is board certified in forensic psychology, is certified as a diplomate in the American Board of Psychology, in the American Board of Forensic Psychology, and has performed thousands of evaluations in her role as a forensic monitor." *Id.*, pp. 6, 7.

**{¶23}** The trial court then compared the doctors' reports, opinions and testimony. The trial court found, "Dr. Webber's report and opinions are based largely on the subjective reports of Ms. Cochran." *Id.*, p. 7. "Dr. Webber did not speak with anyone about Ms. Cochran's condition around the date of the offense." *Id.*, p. 8. "No one reported having seen any change in Ms. Cochran's behavior in the days prior to October 28[th]." *Id.*, p. 10. "Dr. Webber believed that some of Ms. Cochran's statements were perhaps not true or only partially true, there is an indication of possible malingering, but yet Dr. Webber did literally no malingering testing, she didn't run a single test." *Id.* "I found Dr. Webber's report to be, I'll put it politely, imprecise." *Id.*, p. 12. "Dr. Webber stated in her report that

she didn't find Ms. Cochran's prior treatment records relevant but, then admitted at trial she didn't actually review Ms. Cochran's prior treatment records." *Id.* "Dr. Webber said that Ms. Cochran's prior actions were evident to her friends and family, but then clarified the only family related to some depression or other symptoms like that, that had happened months or years before the conduct here and the only friends was the one friend named Ashley that she never followed up with." *Id.* The trial court also took issue with Dr. Webber's finding that Cochran's behavior was consistent. The trial court found that Cochran's behavior was inconsistent and stated, "We see during Ms. Cochran's arrest on the morning of the 28th that she is, except for a brief moment when she is being searched, calm, polite, passive, responsive and coherent." *Id.*, p. 14. "Then at the jail several hours later, "rude, disobedient, disorderly, hostile, aggressive, combative, threatening suicide, making sexually suggestive comments, throwing food, assaulting corrections officers." *Id.*

**{¶24}** In contrast, the trial court found that, "Dr. Marciani evaluated collateral sources." *Id.*, p. 17. "She talked to [Husband]. She talked to defendant's mother." *Id.* "Dr. Marciani also talked about the MFAST, she performed it but didn't really rely on it solely and used it to quote, what she said refined her understanding of possible feigning along with symptoms that don't match and the lack of any significant AOD history." *Id.*, p. 18.

**{¶25}** Here, there was competing testimony as to whether the NGRI defense was applicable in this case. The trial court record reflects that the trial court gave full and fair consideration to the opinions of each expert witness.

**{¶26}** Cochran was required to show that the NGRI defense applied by a preponderance of the evidence. Given the evidence before it, the trial court did not err in finding that Cochran "has not proved by a preponderance of the evidence that she was

suffering from any serious mental disease or defect and did not understand the wrongfulness of her conduct." *Id.*, p. 22.

**{¶27}** The record shows that the trial court did not lose its way nor is there overwhelming or contradicting evidence sufficient to reverse the findings of the trial court.

**{¶28}** Cochran's first assignment of error is overruled.

**{¶29}** Appellant contends in her second assignment of error that the trial court erred when it failed to merge Cochran's convictions for domestic violence and aggravated menacing with her conviction for kidnapping. We disagree.

**{¶30}** Appellant contends that, "The issue was preserved for appeal when the trial court merged Cochran's convictions for Kidnapping and Abduction but failed to also merge convictions for Domestic Violence and Aggravated Menacing." *Appellant Brief*, p. 8. Cochran fails to cite any case law, statutes or other authority to support this argument. We find this argument to be unpersuasive.

**{¶31}** Generally, an appellate court reviews *de novo* whether certain offenses should be merged as allied offenses under R.C. 2941.25 prior to sentencing. *Bailey*, 2022-Ohio-4407, ¶ 6, citing *State v. Williams*, 2012-Ohio-5699, ¶ 1. However, "the failure to raise arguments related to merger of allied offenses at the time of sentencing forfeits all but plain error." *Bailey* at ¶ 7, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 28. Here, because Cochran did not object to the trial court's alleged failure to merge allied offenses of similar import at the time of sentencing, she forfeited all but plain error.

**{¶32}** Under Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The trial court's error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d

21, 27 (2002). "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), ¶ 3 of the syllabus.

**{¶33}** "In order to prevail under a plain-error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error." *State v. Sheeler*, 2023-Ohio-1130, ¶ 37 (5th Dist.).

**{¶34}** *State v. Ruff*, 2015-Ohio-995, ¶ 25, discussed this Court's review of the issue of allied offenses. "The reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.*

**{¶35}** The same conduct by Cochran can support multiple offenses. *Ruff* at ¶ 26, states, "[a] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense."

**{¶36}** In the case at hand, Cochran was found guilty of kidnapping in violation of R.C. 2905.01(A)(3). Subsection (A)(3) provides that, "(A) No person, by force, threat, or deception *** remove another from the place where the other person is found or restrain the liberty of the other person *** (3) To terrorize, or to inflict serious physical harm on the

victim or another". The trial court found, "[M]s. Cochran used threats and force to remove her [Husband], from the place where he was in the family room of their home, caused him to be forced at gunpoint to the basement of his home, and by doing so, plainly restrained his liberty." *11/26/24 Transcript*, pp. 3, 4.

**{¶37}** Cochran was also found guilty of domestic violence in violation of R.C. 2919.25(C), "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." The trial court found, "[M]s. Cochran did by threat and force, knowingly cause her [Husband], to believe that she would cause him imminent physical harm." *Id.*, p. 5.

**{¶38}** Cochran was also found guilty of Aggravated Menacing in violation of R.C. 2903.21. "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs." The court found, "[M]s. Cochran knowingly caused [Husband] to believe that she would cause him serious physical harm." *Id.*, p. 5.

**{¶39}** Cochran argues that it was her same conduct, "[n]amely pulling a gun on her husband, threatening to shoot him, and forcing him into the basement, that justified

her conviction on each of the three counts." *Appellant Brief*, p. 9. Appellant further argues Cochran acted with the same animus. *Id.*

**{¶40}** We find that Cochran has failed to prove that the act of restraining a person's liberty and causing a person to believe that you are going to cause them imminent harm are offenses that should be merged. The trial court's finding that Cochran plainly restrained Husband's liberty and caused him to believe that she intended to cause him imminent harm supports the finding of guilt to both kidnapping and domestic violence.

**{¶41}** Cochran has failed to show that the trial court committed plain error or that a reversal is necessary to support the miscarriage of justice. Cochran's second assignment of error is overruled.

## CONCLUSION

**{¶42}** Based upon the foregoing, Appellant's first and second assignments of error are overruled and the judgment of the Delaware County Court of Common Pleas, is affirmed in all respects.

By: Montgomery, J.

Baldwin, P.J. and

Popham, J. concur.